## SIMMONS CORPORATION v. NATIONAL SPRING & WIRE CO. et al.

No. 5507.

Circuit Court of Appeals, Sixth Circuit.

Nov. 11, 1930.

C. A. Soans, of Chicago, Ill., and S. C. Barnes, of Detroit, Mich. (George P. Fisher, of Chicago, Ill., on the brief), for appellant.

B. L. MacGregor, of Chicago, Ill., for appellees.

Before DENISON, MOORMAN, and HICKENLOOPER, Circuit Judges.

MOORMAN, Circuit Judge.

This is a suit for infringement of the Read patent 1,218,314. Only two of its seven claims, 1 and 2, were alleged to be infringed at the trial. The defenses were invalidity and noninfringement, the latter of which was deemed sufficient by the trial court to dismiss the bill. The patent is for an improvement in machines for placing springs in mattresses. The claims in issue are set out in the margin.[1] The device for which they call consists of three elements: (1) A spring retaining receptacle; (2) means movable in the receptacle to eject the spring from one end thereof; and (3) in claim 1, frictional means adjacent to the opening in the receptacle adapted to control the action of the spring in the receptacle as it moves therefrom, or, as in claim 2, flexible

---

[1] 1. In a device of the class described, a spring retaining receptacle, an ejector for a spring, movable in said receptacle to drive the spring out of an opening in said receptacle, and frictional means adjacent to the opening in the receptacle adapted to control the action of the spring in the receptacle as it moves therefrom.

2. In a device of the class described, a cylindrical member adapted to receive a spring, means movable in the cylindrical member to eject a spring from one end thereof, flexible spring fingers extending from the said end of the cylinder forming normally a cone, but adapted to be expanded into a cylinder by said ejecting means.

spring fingers extending from the end of the receptacle forming normally a cone, but adapted to be expanded into a cylinder by the ejecting means. The defendants' device consists of a rigid filling tube having its forward upper end cut off on a diagonal line and having a nonflexible metal cover hinged to the body of the tube to cover the opening caused by the cutting away of the forward part. It has a plunger for ejecting the spring from the tube into a fabric pocket which is placed over the nozzle of the filling tube. When the plunger is moved forward, the spring coil raises the hinged cover. and passes under it into the fabric pocket.

Claims 1 and 2 of Read's original application included the first two elements of the claims in suit, but called for, as their remaining element, means for retaining adjacent to or on the end of the receptacle "the open end of the pocket to be spring filled." Upon the citation of Watson 125,233, against these claims in the Patent Office, they were abandoned, and the claims in suit became claims 1 and 2 of the patent as issued. The defendants contend that, because of the abandonment of these two claims and the specifying in the claims in suit of "frictional means adjacent to the opening in the receptacle," and "flexible spring fingers extending from the said end of the cylinder forming normally a cone," the patentee has limited himself in his claims to means adapted to accomplish the function of compressing the spring before it is discharged from the receptacle. We are not inclined to adopt that construction. The abandoned claims were broadly designed to cover a retaining receptacle or cylinder and an ejector member therein with means for retaining on the end of the cylinder the open end of the pocket to be filled. Nothing was said in those claims about a guide for conveying the material from the filler to the bag; nor did Watson contain this element. We think, therefore, that the Patent Office proceedings do not of themselves prevent the construction of the claims as calling for means for guiding and controlling the action of the spring as it moves from the receptacle into the pocket.

It was common in the packing and filling art before Read to insert a mechanical filler into a bag or pocket to be filled, force the contents in, and then withdraw it. Mechanical fillers used in making fillings of materials such as cotton, felt, and hair were in general use. Many of them embraced the equivalent of the first two elements of plaintiff's claims.

Whipple 545,564 was especially adapted to the filling of can containers with smoking tobacco or other granulated materials. It was utilized by inserting a wedge-shaped point, consisting of four plates hinged to the end of the tube, into the pocket, forcing the contents in, and then withdrawing the filler. Wilhelm 861,007, and Fischer 1,078,492, also had means for guiding the material into the container or pocket. Read adopted for such means flexible spring fingers interposed between the filler and the pocket. The defendants do not have this intermediate member at all. They carry the end of the filler itself into the pocket to be filled, making the tip of the filler partially collapsible so that it will more easily enter the pocket. To give to the claims in suit a construction which would make this partially collapsible tip the equivalent of Read's controlling exit means would make the Read claims, it seems to us, read upon much of the prior art. Thus in our opinion Read's patent can only be sustained by limiting the claims to the type of means used by him for guiding the material from the receptacle into the pocket. We think the defendants' device is not to be regarded as having this intermediate member means.

The decree is affirmed.